UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DANIEL A. BERNATH,
    Plaintiff,

                                    CASE NO.     2:15-CV-00358-UA-CM

v.

MARK CAMERON SEAVEY,
    Defendant.

_____/

## MOTION OF THE AMERICAN LEGION FOR LEAVE TO INTERVENE AS DEFENDANT AND COUNTER-PLAINTIFF UNDER RULE 24

COMES NOW The American Legion (the "Legion"), the employer of Defendant Mark Cameron Seavey ("Seavey"), by and through its undersigned attorneys, pursuant to Rule 24, *Federal Rules of Civil Procedure*, and Local Rule 3.01, and moves this Court for leave to intervene as a Party Defendant and Counter-Plaintiff in this action and file its Answer and Affirmative Defenses to Plaintiff's First Amended Complaint and its Counterclaims (attached hereto, with exhibits, as Exhibit 1). As grounds therefor, the Legion shows the Court as follows:

### FACTS

1.    This copyright infringement action was originally filed by the Plaintiff on June 16, 2015, and a cause of action was added to the case by Plaintiff in his amended complaint on July 16, 2015.

2.    Defendant Seavey is an employee of the Legion.

3.    The Legion is a federally created and federally chartered non-profit national organization devoted to veteran, patriotic and military issues, with its national headquarters located in Indianapolis in the State of Indiana.

4.      Plaintiff has repeatedly threatened both Seavey and the Legion with lawsuits for copyright infringement and intentional infliction of emotional distress, among other claims by Plainitff, in an effort to force the Legion to terminate Seavey's employment and/or to force Seavey to remove material about Plaintiff from a website at http://thisainthell.us (the "Blog") (See Exhibit 2 hereto).

5.      On or about April 25, 2014, Plaintiff filed a lawsuit against numerous parties, including Seavey and The Legion (Oregon Circuit Court for the County of Multnomah, Case No. 1401-00633) alleging that they defamed him, committed copyright infringement, inflicted emotional distress on him, were involved in racketeering, unfair business practices, negligent hiring, supervision and training, and breach of contract.

6.      The aforementioned Oregon lawsuits against Seavey and The Legion were dismissed upon motion to dismiss and/or motion for summary judgment and The Legion was awarded $2500.00 in enhanced prevailing party costs against Plaintiff, and Seavey was awarded $500.00 in prevailing party costs against Plaintiff.

7.      On or about June 20, 2014, Plaintiff filed a lawsuit against numerous parties, including Seavey and The Legion (Florida Circuit Court for the Twentieth Judicial District for Lee County, Case No. 14-CA-001838) alleging among other things that they defamed him and inflicted emotional distress on him.

8.      On or about October 6, 2014, after Plaintiff failed to serve the complaint in the above-referenced Florida state action on either Seavey or the Legion, Plaintiff voluntarily dismissed the lawsuit without prejudice.

9.      On June 12, 2015, Plaintiff wrote an email to the webhosting company for the Blog, and to Legion employee Seavey at his Legion email address, claiming that he was

suing Seavey and The Legion for copyright infringement (and he references child

pornography in this email), essentially as joint tortfeasors, and claiming that Seavey and

The Legion had published an image he owns on the Blog, more specifically as follows

(See Exhibit 3 hereto):

> *I am preparing a copyright lawsuit against Mark C. Seavey and the American Legion for using my*
> *copyrighted image.*
> *I am the owner of the image which Seavey and the American Legion has published on your*
> *servers. □ I will serve the statutory Notice of Copyright Violation and demand on your shortly but*
> *will file suit within the next few days for the copyright theft and name Linode as a defendant as*
> *well as Jonn Lilyea, Mark Seavey, Terrence B. Hoey and the American Legion.*

10.    Both Defendant and the Legion believe that Plaintiff will seek to add the Legion as a

party to this action or will file a separate action against the Legion based on the facts and claims

he has filed against Defendant in this action.

11.    Bernath has intentionally and maliciously published the following false statements about

Legion employee Seavey and The Legion online on his website at www.aspecialdayguide.com

over infringing copies of the emblem of the Legion (the background of his website at

www.aspecialdayguide.com includes the Legion emblem), some of which he is currently

publishing:

> *Jonn Lilyea, Mark Seavey, American Legion; murderers*

> *Murderer: The American Legion*

> *Murderer: Mark C. Seavey, American Legion*

> *Mark Seavey, American Legion Internet Director, is a racist and sexist*

> *Mark Seavey, American Legion National Director, caught on surveillance*
> *cameras violating court order weekend of 4.09.2015 by "Stalking" victim's home*
> *in Maryland, according to Maryland Police sources.*

*Maryland Criminal Probe Expands to American Legion itself: Seavey attorney admits Seavey was paid by the American Legion to interfere in Congressional Election. Warrants and summons issued to Indiana*

*Within 4 hours of the Court Order, Jonn Lilyea, Mark Seavey, and The American Legion in contempt of court for violating the order.*

*Another restraining order issued Verna L. Jones' terrorist American Legion director Mark Seavey*

*American Legion Director Mark Seavey "restrained" from rape, threatening, killing or harming people.  Mark Seavey made his threats, using American Legion facilities and from deep within the American Legion headquarters in Indianapolis*

*National Commander Daniel A. Bernath will preserve American Legion's tax exempt status in jeopardy by Legion employees (Mark Seavey) campaigning for and attacking political candidates*

*National Commander Daniel A. Bernath will Disband the unit within American Legion that tormented two veterans to self murder*

*American Legion website has tormented eight people, two veterans to self murder*

*Verna L. Jones Exec Dir American Legion At this point  I wonder if Paul K. Wickre didn't spend his first nine months dodging coat hangers?*

*American Legion Director and terrorist Mark Seavey*

*Mark Seavey Director American Legion, leader of terrorists gang*

*Mark Seavey, American Legion Director/Manager/clerk must be fired for his vile treatment of American Legion members, VETERANS, OFFICERS, HOMOSEXUALS*

*Mark Seavey, Director of American Legion is a racist*

*American Legion Director Mark Seavey says that valor terrorists that have*

*killed Two Air Force veterans is 100% funded by American Legion
Seavey told "go after these guys.  I was doing that in my (American Legion) office when writing at thisainthell (tormenting veteran to suicide)*

*Petition to expel American Legion Director Mark Seavey from our beloved Legion for abuse of veterans*

*American Legion expels Vietnam Veteran/Cold War Veteran for revealing all of the sexual molesting and theft within the American Legion*

*Mark Seavey, American Legion National Director, caught on surveillance cameras violating 4.09.2015 by "Stalking" victim's home in Maryland, according to police sources*

*Mark Seavey Director American Legion, leader of terrorists gang*

*American Legion advocate MARK SEAVEY on The Hill publicly insults congressman and congresswomen, accuses them of sexual harassment, insanity, etc.*

*Mark Seavey, Internet Director of American Legion gay bashing, and inspiring violence to gay veterans*

*Rape Mark Seavey American Legion Director likely to commit rape in future says judge*

*This is what the American Legion website terrorism has done to a family.*

*Verna L. Jones, Exec Dir American Legion "supports" through American Legion "salaries" this snuff-veterans website*

*Mark Seavey, American Legion Director and his many homosexual experiences in the US Army*

*Here's American Legion Director Mark C Seavey's child porn homosexual erotic collection*

*Mark "Jared" Seavey of Indianapolis—employed by American Legion loaded with child molesters*

12.     The Legion has the exclusive right to use the names The American Legion and

American Legion, as well as the emblem of the American Legion (See Title 36 of the

U.S. Code, Section 21705:

http://www.legion.org/documents/legion/pdf/legion_charter.pdf), and pursuant to United

States federal law, using the Legion emblem without authorization can be a criminal act

punishable by fines and/or up to six months of imprisonment (See Title 18 of the U.S. Code, Section 705: http://codes.lp.findlaw.com/uscode/18/I/33/705).

13.     The Legion believes that absent its intervention it will be impaired from protecting its interests, particularly its economic interests in its name and reputation, and that it has claims, counterclaims and defenses that share common questions of law and fact with the main action, and the Legion has prepared an answer and counterclaims in this action against Plaintiff for declaratory judgment on the copyright infringement and intentional infliction of emotional distress claims at issue in this action, for defamation and defamation *per se*, copyright infringement of the Legion emblem, and for cyber-squatting, and the Legion requests leave to intervene in this action as a Defendant and Counter-Plaintiff in order to file its claims for declaratory judgment on copyright infringement and intentional infliction of emotional distress and its counterclaims against Plaintiff arising from the same facts and law at issue in this action (See affidavit of Philip B. Onderdonk, Jr., National Judge Advocate of The American Legion, attached hereto as Exhibit 4).

## MEMORANDUM OF LAW

The Legion must intervene as of right in this action to protect its interests in its reputation, its name, its intellectual property, its emblem, its economic interests derived from its legal rights, and its employee Defendant Seavey. As set forth more fully below, the existing Defendant Seavey cannot adequately protect the interests of the Legion in the instant action.

Alternatively, the Legion moves this Court for permission to intervene pursuant to Fed. R. Civ. P. 24(b) because the Legion plans to present legal defenses to the relief Plaintiff Bernath currently seeks, as well as counterclaims against Plaintiff Bernath.

## I. Intervention of The American Legion as a Matter of Right under Rule 24(a)(2)

Granting the relief sought by Plaintiff in this action will prejudice the Legion in that it will not have adequate opportunity to rebut the claims made about it and its employee Defendant Seavey by Plaintiff. The Legion has a vital interest in protecting its employees, its reputation, its name, its emblem, its intellectual property, and its economic interests, and the interests of its members, and Defendant Seavey cannot adequately represent the Legion or its interests in the instant action where they are at issue.

The underlying litigation concerns defamatory statements made by Plaintiff, and claims of copyright infringement and intentional infliction of emotional distress alleged against Defendant Seavey, but also at times alleged by Plaintiff to have been committed by the Legion. Plaintiff has sued the Legion twice and has repeatedly threatened to sue the Legion based on the very same facts and law upon which he bases his claims against Legion employee Seavey

A ruling that the defamatory statements made by Plaintiff were not defamatory, and/or a ruling that the Legion employee Defendant infringed the copyright of Plaintiff and intentionally inflicted emotional distress on Plaintiff would cause substantial harm to the economic interests of the Legion were it not allowed to intervene.

The Legion is the largest veteran member non-profit organization in the country, and expends vast resources to promote the interests of veterans, the military and patriotism, as well as its own reputation, intellectual property, name, emblem, and the interests of its members. Plaintiff's activities have resulted in complaints to the Legion about it and its employee Seavey and the false and defamatory statements by Plaintiff, some from Legion members.

7

Federal Rule of Civil Procedure 24(a) provides, "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2). To intervene as of right under Rule 24(a)(2), a party must establish that "(1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit." *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (citing *Athens Lumber Co. v. FEC*, 690 F.2d 1364, 1366 (11th Cir. 1982)).

The Legion satisfies each of these four criteria.

## A. The Application for Intervention is Timely

The Legion's Motion to Intervene is timely because it is being filed three months after Plaintiff's amended complaint but before a case management plan has been put in place in the underlying action, before initial disclosures are due, and before discovery has commenced. *See, e.g., Ga. v. United States Army Corps of Eng'rs*, 302 F.3d 1242, 1259–60 (11th Cir. 2002) (concluding that delay of six months between the time when party knew of its interest in the case and the time the party moved to intervene did not constitute untimeliness, even where discovery was largely complete and the parties had agreed upon a briefing schedule); *Chiles*, 865 F.2d at 1213 (concluding that motion to intervene was timely since it was filed "only seven months after [plaintiff] filed his original complaint, three months after the government filed its motion to dismiss, and before any discovery had begun"); *Nat'l Parks Conservation Ass'n v. United States DOI*, 2012 U.S. Dist. LEXIS 57707, at *6–*7 (M.D. Fla. Apr. 24, 2012) (concluding that motion

to intervene filed within seven months of the original complaint's filing was timely, "especially since discovery ha[d] not begun").

When the underlying action began, the Legion and Legion employee Defendant Seavey hoped that Plaintiff might withdraw his claims or cease to pursue them. Although Plaintiff has made one vague unsupported gesture at settlement, it has become apparent that he will be pressing his claims.

Because the Legion moves to intervene before a case management schedule has been set and initial disclosures produced by either party, there is no risk that allowing intervention will upset any briefing or hearing schedule previously set by the Court, because while there is a December 7, 2015 pretrial conference, a case management schedule has not been set. Further, intervention will neither delay any proceedings nor prejudice the rights of any of the existing parties, as the Legion intends to cooperate fully in establishing a case management plan and intends to attend the December 7, 2015 pretrial conference. *See* Fed. R. Civ. P. 24(b)(3); *see Naples 9, LLC v. Everbank*, 2011 U.S. Dist. LEXIS 53120, at *3–*4 (M.D. Fla. May 18, 2011) (concluding that allowing intervention where intervenor intended to follow the same schedule as the current parties in the case would not prejudice plaintiffs).

Permitting the Legion to intervene at this very early stage, prior to any discovery, initial disclosures, motion practice, hearings, or even establishment of a case management plan, will not result in delay or prejudice the rights of any of the original parties.

## B. The Legion Has a Legally Protectable Interest in the Action

To intervene as of right in the Eleventh Circuit, an intervenor's interest in the subject matter of the litigation must be "direct, substantial, and legally protectable." *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005) (citation omitted). An

economic interest is insufficient for intervention unless the interest "derives from a legally protectable right." *Id.*; *see also United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 710 (11th Cir. 1991). The Legion "must show that the present proceedings threaten some substantive legal protection . . . to support intervention by right." *S. Fla. Water Mgmt. Dist.*, 922 F.2d at 710.

In the Eleventh Circuit, a movant who shows independent standing is deemed to have a sufficiently substantial interest to intervene. *See Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1330 (11th Cir. 2007); *Meek v. Metro. Dade Cnty., Florida*, 985 F.2d 1471, 1481 (11th Cir. 1993). However, even if a movant cannot making that showing, the movant may still be entitled to "piggyback" upon the standing of original parties to satisfy the standing requirement. *Dillard*, 495 F.3d at 1330. In order to assert "piggyback" standing, the movant must simply establish "the existence of a justiciable case or controversy at the point at which intervention is sought." *Id.* In this case, the Legion can establish independent standing on the basis of organizational standing. *See Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1350 (11th Cir. 2009) ("[A]n organization has standing to sue on its own behalf if the defendant's illegal acts impair its ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts.") (quoting *Fla. State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1165 (11th Cir. 2008)).

## 1. The Legion has organizational standing to intervene

The Legion exists to promote and protect the interests of its members, who are military veterans, and the interests of veterans and the military, in general. It was created and chartered by Congress to serve that purpose and expends great resources to both protect and promote those interests, as well as protect and promote its own name, emblem and employees.

Plaintiff has previously sued both Seavey and the Legion multiple times for numerous claims, including copyright infringement and intentional infliction of emotional distress, and has threatened the Legion with a copyright infringement lawsuit based on the exact same facts alleged in Plaintiff's complaint against Seavey. Essentially, Plaintiff threatened to sue Seavey and the Legion as joint tortfeasors for copyright infringement, and then sued Seavey alone. The Legion fully expects and fears that Plaintiff will sue it again for the same cause of action, based on the same facts, as well as for intentional infliction of emotional distress, and the Legion desires to address those causes of action in this action.

Plaintiff has defamed both the Legion and Seavey in numerous defamatory statements that usually include reference to them both, and often refers to Seavey as a Legion employee in a manner that blankets the defamation over both Seavey and the Legion, and predicates the defamation of the Legion on its employment of Seavey.

Seavey's counterclaims against Plaintiff, and the facts and law upon which they are based, are almost identical to the proposed counterclaims of the Legion against Plaintiff for defamation and defamation *per se* that it wishes to file in this action as a Counter-Plaintiff. In fact, absent the presence of the Legion, Seavey cannot adequately protect the interests of the Legion in protecting its name, reputation and interests.

Plaintiff's motivation for filing the instant action, and for his defamatory activity and other injurious activity, is predicated upon a personal grievance he has with Seavey that he has expanded to include Seavey's employer the Legion, all in an effort to injure the reputations of Seavey and the Legion until he can force the Legion to terminate Seavey and/or force Seavey to have the material published about Plaintiff on a blog at http://thisainthell.us removed from the internet.

11

The facts and the law involved in the claims of Plaintiff, Seavey and the Legion are common and overlap, and it would be regrettable if the Legion were denied intervention such that it was forced to file a separate but largely duplicative action against Plaintiff in this very Court. Beyond the resources that the Legion has already had to expend in dealing with Plaintiff's actions, threats, and lawsuits, to protect its name and reputation, having to file a separate lawsuit in this Court would require the expenditure of additional Legion resources.

While the Legion is a large organization, requiring it to protect its name, reputation, interests and employee in a separate action, where the parties, law and facts are largely the same as in the instant action would fly in the face of equity. The economic interests of the Legion would be adversely and seriously impacted by rulings that its employee Defendant Seavey had taken the actions alleged by Plaintiff, or a ruling that Plaintiff's false statements about the Legion were not defamatory—the reputation of an organization like the Legion is its primary asset. Further, the aforementioned economic interests of the Legion at issue in this action derive directly from the damage caused by Plaintiff to the legal rights that the Legion possesses in its name, reputation, intellectual property and other legal interests.

**2. Even absent independent standing, the Legion has "piggyback" standing to intervene**

The Legion can establish independent standing in the underlying action.

However, even if the Court were to conclude that it does not, the Legion still should not be denied the right to intervene because they lack standing. Indeed, as noted above, it is well established in the Eleventh Circuit that an intervenor need not demonstrate "independent standing" to join a pending case if the intervenor can "'piggyback' upon the standing of [the] original parties." *Dillard*, 495 F.3d at 1330; *see also Trobvich v. United Mine Workers*, 404 U.S. 528 (1972) (allowing plaintiff-intervenor to remain in case even though he could not

independently satisfy standing requirement); *Chiles*, 865 F.2d at 1213 ("[A] party seeking to intervene need not demonstrate that he has standing in addition to meeting the requirements of Rule 24 as long as there exists a justiciable case or controversy between the parties already in the lawsuit."). The Eleventh Circuit, like many other Courts of Appeals, has reasoned that once the original parties establish their basis for standing, a court's jurisdiction vests, and so long as a case or controversy remains, the proper addition of Rule 24 intervenors does not implicate Article III. *See Dillard*, 495 F.3d at 1330 (noting the "lessened justiciability concerns in the context of an ongoing Article III case or controversy" allowing intervenors to "piggyback" upon the standing of original parties); *Chiles*, 865 F.2d at 1213 (holding independent standing not required to intervene in a pending suit); *Assoc. Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994) (recognizing that intervenors "need not have the same standing necessary to initiate a lawsuit in order to intervene" as other parties); *Canadian Wheat Bd. v. United States*, 637 F. Supp. 2d 1329, 1340–42 (allowing intervention despite lack of independent standing since the Article III jurisdictional requirement had already been met and continued to exist).

Here, there is an ongoing case or controversy between Plaintiff and the existing Defendant in the underlying action, and each has standing to assert the claims and defenses they have asserted in their initial pleadings. The presence of an additional party, with its own ongoing controversy with Plaintiff, in the underlying litigation, even if they alone could not independently satisfy Article III requirements (which the Legion can), will not disturb jurisdiction that has already been established; the Article III requirements satisfied by the original parties will remain intact. *See Ruiz*, 161 F.3d at 832–33 & n.27.

Thus, even if this Court were to conclude that The Legion lacks independent standing to intervene in the underlying action (they do not), the Court still should conclude that

13

the Legion has standing by virtue of their ability to "piggyback" off the standing of the original parties.

**C. Plaintiff's Lawsuit will Impair or Impede The Legion's Ability to Protect Its Interests**

To satisfy this third element of the Rule 24(a) test for intervention as a matter of right, the Legion must show that the suit "may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2). As explained above, The Legion's interests in protecting its name, reputation, emblem, intellectual property, employees, and the interests of its members would be directly and adversely affected by rulings in Plaintiff's favor that Legion employee Defendant Seavey infringed Plaintiff's copyright, inflicted emotional distress on Plaintiff, or rulings that Plaintiff's statements about the Legion and Legion employee Defendant Seavey were not defamatory.

Indeed, if the Legion is not able to protect its interests and rights and the interest of its members in maintaining the reputation of the Legion in this litigation, the Legion will be required to expend additional resources in a separate and largely duplicative action against Plaintiff that would not ensure the protection of the Legion's interests in the instant action.

This action is ripe for intervention by the Legion at this time.

**D. The Legion's Interests Are Not Adequately Represented by Defendant Seavey**

As explained above, the Legion has economic interests at stake in this action that derive from its legal rights, and while the facts and the law are largely identical in most of the Legion's proposed declaratory judgment claims and counterclaims, and the claims of Legion employee Defendant Seavey, the interests of the Legion are not adequately protected by Defendant Seavey.

Both the United States Supreme Court and the Eleventh Circuit have repeatedly held that in order to satisfy this requirement, an intervenor need only show that the existing representation

14

of its interests "may be" inadequate, and "the burden of making that showing should be treated as minimal." *Trobvich*, 404 U.S. at 538 n.10; *see also Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993). Moreover, "[a]ny doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action." *Fed. Sav. & Loan Ins. Corp.*, 983 F.2d at 216. Courts in this Circuit have also repeatedly held that the standard for inadequate representation is not heightened when government defendants are involved, particularly in light of the competing interests that governmental entities are required to balance. *See, e.g., Meek*, 985 F.2d at 1478 (concluding that private intervenor's interest was not represented by governmental party). While the Legion is not a governmental entity, it is a Congressionally chartered non-profit with a very specific charitable purpose whose interests cannot be adequately defended by an individual defendant in this action.

In this action, Legion employee Defendant Seavey may be able to adequately defend and bring counterclaims to protect his own interests, and those may and do overlap in places with the interests of the Legion in places, but he is not able to address, defend or protect all of the interests of the Legion in this action before this Court, even where the facts and Plaintiff's actions with regard to the Legion and Defendant Seavey are identical or almost identical.

## II. ALTERNATIVELY, THE COURT SHOULD PERMIT INTERVENORS TO PERMISSIVELY INTERVENE PURSUANT TO RULE 24(b)(2).

Federal Rule of Civil Procedure 24(b) provides as follows: "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "[I]t is wholly discretionary with the court whether to allow intervention under Rule 24(b)." *Worlds v. Dep't of Health & Rehab. Servs.*, 929 F.2d 591, 595 (11th Cir. 1991). A party seeking permissive intervention pursuant to

15

Rule 24(b)(2) must prove the following: "(1) his application to intervene is timely; and (2) his claim or defense and the main action have a question of law or fact in common." *Chiles*, 865 F.2d at 1213. A court must also consider whether intervention will unduly prejudice or delay the adjudication of the rights of the original parties. *ManaSota-88, Inc. v. Tidwell*, 896 F.2d 1318, 1323 (11th Cir. 1990). A court has broad discretion to grant permissive intervention. *Chiles*, 865 F.2d at 1213.

As more fully explained above, here, the Court should permit The Legion to permissively intervene because it timely filed its Motion to Intervene, intervention will not unduly delay these proceedings, and the defenses and claims of the Legion have questions of law or fact in common with the main action.

## A. The Legion's Motion to Intervene Was Timely and Intervention will Not Unduly Delay the Proceedings

For the reasons set forth above, the Legion's Motion to Intervene is timely and will not unduly delay the proceedings or prejudice the existing parties to the underlying action. The Legion does not seek to extend the briefing or hearing schedule previously set by the Court because a case management schedule has not been set, the Legion intends to attend the December 7, 2015 pretrial conference and follow the case management schedule that is ultimately set, discovery has not begun, and initial disclosures have not even been exchanged.

## B. The Legion's Reason for Intervention Shares a Common Question of Law or Fact with the Underlying Action

The underlying facts of this case center on Plaintiff's assertions of copyright infringement by Legion employee Defendant Seavey (the same copyright infringement that Plaintiff has claimed the Legion committed, and sued and threatened to sue the Legion over), intentional infliction of emotional distress Plaintiff claims was inflicted on him by Legion employee

16

Defendant Seavey (the same emotional distress that Plaintiff has claimed that the Legion committed, and sued and threatened to sue the Legion over), and Plaintiff's defamatory statements about both the Legion and Legion employee Defendant Seavey.

As noted above, The Legion seeks to intervene to protect its interests and the interests of its members related to Plaintiff's attacks on its reputation, name, emblem, intellectual property and economic interests, as well as threats of lawsuits and continued lawsuits filed by Plaintiff over the same causes of action Plaintiff raises in the instant action. The Legion's reasons for intervention are based on the same set of facts as the underlying action, and even where the Legion desires additional counterclaims beyond Defendant Seavey's counterclaims, they are largely based upon the same facts already at issue and allegations made by the existing parties.

## CONCLUSION

For the reasons stated above, the Legion respectfully requests that this Court allow it to intervene, either as of right or permissively.

WHEREFORE, the Legion, by and through its undersigned attorneys, moves the Court for leave to intervene as a party defendant and counter-plaintiff, to file its Answer and counterclaims, and for such other and further relief as the Court deems just and proper.

### M.D. FLA. LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Rule 3.01(g), *United States District Court Rules for the Middle District of Florida*, the undersigned counsel conferred with the Plaintiff in a good faith effort to resolve the issues raised herein. The Plaintiff opposes the motion although he has not presented alternatives or solutions to resolving the issues raised. The undersigned counsel will continue his efforts to confer with the Plaintiff after filing this motion and promptly supplement the motion with a

statement certifying whether or to what extent the parties have resolved the issues presented in the motion.

/s/ **John D. Mason**
John D. Mason
DC Bar No. 464072
Copyright Counselors, LLC
Trial Counsel for Seavey
Counsel for The American Legion
7315 Wisconsin Ave.
Suite 400 West
Bethesda, MD 20814
Telephone: (888) 313-3637
Facsimile: (301) 760-7032
jmason@copyrightcounselors.com
(Special Admission PHV)

/s/ **Mark S. Zaid**
Mark S. Zaid
DC Bar No. 440532
Mark Zaid, P.C.
Co-counsel for Seavey
Counsel for The American Legion
1250 Connecticut Ave.
Suite 200
Washington, DC 20036
Telephone: (202) 454-2809
Facsimile: (202) 330-5610
mark@markzaid.com
(Special Admission PHV)

/s/ **Eric D. Molina**
Eric D. Molina
Florida Bar No. 0528021
Pavese Law Firm
Local Counsel for Seavey
Local Counsel for The American
Legion
P.O. Drawer 1507
Fort Myers, Florida 33902
Telephone: (239) 336-6253
Facsimile: (239) 332-2243
ericmolina@paveselaw.com

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 2, 2015, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system.  I further certify that I served the foregoing document by email and first-class mail to the following non-CM/ECF participant:

Daniel A. Bernath
1319 Kingswood Court
Fort Myers, Florida 33919
ussyorktowncvs10@yahoo.com

<u>**/s/ Eric D. Molina**</u>
Eric D. Molina
Florida Bar No. 0528021
Pavese Law Firm
Local Counsel for Seavey
Local Counsel for The American Legion
P.O. Drawer 1507
Fort Myers, Florida 33902
Telephone: (239) 336-6253
Facsimile: (239) 332-2243
ericmolina@paveselaw.com