UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DANIEL A. BERNATH,

    Plaintiff,

v.                                                      Case No:   2:15-cv-358-FtM-99CM

MARK CAMERON SEAVEY,

    Defendant.

## ORDER

This matter comes before the Court upon review of the Motion of the American Legion for Leave to Intervene as Defendant and Counter-Plaintiff Under Rule 24 (Doc. 53) filed on November 2, 2015.  On November 11, 2015, Bernath filed a response in opposition, titled "Opposition to [m]otion of Defendant Mark Seavey to intervene (to pay his legal bills) [a]nd money launder American Legion [d]ues." Doc. 55.  On December 4, 2015, with leave of Court, Seavey filed a reply.  The motion, therefore, is ripe for review.[1]

### I. Background

*Pro Se* Plaintiff, Daniel A. Bernath ("Bernath" or "Plaintiff"), filed this action for copyright infringement and intentional infliction of emotional distress against Mark Cameron Seavey ("Seavey" or "Defendant").  Docs. 1, 20.  The factual

---

[1] On November 23, 2015, without leave of court and in contravention to M.D. Fla. R. 3.01(c), Plaintiff filed a second response in opposition.  Doc. 57.  Plaintiff repeatedly has been cautioned by this Court that, although proceeding *pro se*, he still is required to conform to local rules.  *See, e.g.*, Doc. 40 at 1-2; Doc. 33 at 1-2, Doc. 19 at 2.  The Court, therefore, will not consider Plaintiff's second opposition (Doc. 57).

allegations leading to these claims stem from a blog maintained by Seavey, (http://thisainthell.us/), that Seavey used as a forum to "publicly accuse[] Bernath of putting his face likeness over a navy officer's face and with medals and rank that Bernath did not rate." *See* Docs. 20 ¶ 20; 31 at 5 ¶ 20. Bernath alleges that, in doing so, Seavey published one of Bernath's copyrighted photographs without Bernath's consent. *See* Doc. 1 ¶¶ 10-12.

As further support of his claims, Bernath also alleges that Seavey has a "terrorist group," has an intent "to destroy [Bernath]," has engaged in a two year campaign to cause Bernath to "self-murder," and so forth. *See, e.g.,* Doc. 20 ¶¶ 14-16. Moreover, he alleges that "Seavey's publication hosts child pornography and advocates child pornography; torments veterans of the United States military . . . [, and] Seavey has been found guilty of sexual harassment." Doc. 20 ¶ 13. The Complaint also alleges that Seavey committed these acts as an individual and not as an agent or employee of any entity or person. Doc. 20 ¶¶ 20-21.

Seavey is an employee of the national headquarters of the American Legion ("the Legion"), a federally chartered corporation. Doc. 31 at 14 ¶ 1; 36 U.S.C. § 21701. According to the Legion's General Counsel, the Legion "advocates for the interests of its members, the military, patriotism, and all U.S. veterans." Doc. 53-4. Seavey asserts that he writes articles of journalism, such as "articles about examples of Stolen Valor" for the website http:thisainthell.us. Doc. 31 at 14 ¶ 7. Seavey admits that an article was published about Bernath alleging that Bernath had committed Stolen Valor. Doc. 31 at 5 ¶ 20.

In response to Bernath's complaint, Seavey has filed counterclaims against Bernath alleging libel/defamation and defamation *per se*.  Doc. 31.  As factual support for his counterclaims, Seavey relies on some of the allegations raised in Bernath's complaint, such as those relating to child pornography and sexual harassment.  *See* Doc. 31 at 23 ¶ 23.  Seavey also alleges that Bernath began a year and one-half campaign of threats and litigation against Seavey and the Legion, and has instituted a campaign to force the Legion to terminate Seavey's employment.  *Id.* at 15 ¶¶ 9, 12.  Bernath followed through on these threats.  On April 2014, Bernath filed a lawsuit against the Legion and Seavey in Oregon Circuit Court for the County of Multnomah, which was ultimately dismissed.  *Id.* at 15 ¶ 10.  Moreover, Bernath maintains a website of his own, (www.aspecialdailyguide.com), in which he publishes materials that Seavey alleges defames Seavey and the Legion.  *Id.* at 16 ¶ 13.  Seavey further alleges that Bernath was improperly registering domain names in the names of "The American Legion and Mark Seavey."  P. 16 ¶ 14.  Seavey claims Bernath continues to publish false, offensive and defamatory material about Seavey and the Legion, typically over the Legion's logo, in Bernath's website.  *Id.* at 17 ¶ 19.

The Legion files the instant motion seeking to intervene in this matter.  Doc. 53.  The Legion asserts that Bernath repeatedly has threatened both Seavey and the Legion with lawsuits for copyright infringement and intentional infliction of emotional distress, and in fact did sue them twice already, with both cases ending in dismissal.  Doc. 53 at 2.  The Legion further asserts that Bernath intentionally and maliciously has published false statements about Seavey and the Legion on Bernath's

website.  *Id.* at 3-4.  Moreover, Bernath continues to use the name and logo of the Legion, in contravention of federal law.  Doc. 53 at 5-6.  The Legion argues that it must intervene as a matter of right to protect its interests in its reputation, name, intellectual property, emblem, economic interest derived from its legal rights, and its employee, Seavey.  *Id.* at 6.  The Legion argues that it has claims and counterclaims against Bernath that share common questions of law and fact with this action.  *Id.* The Legion intends to file an answer and counterclaims against Bernath for declaratory judgment on the copyright infringement and intentional infliction of emotional distress claims at issue in this case, for defamation and defamation *per se*, copyright infringement over the Legion emblem, and for cyber-squatting.  Docs. 53 at 6; 53-4 ¶ 16.

Bernath responds that the Legions' request to intervene "is simple money laundering by Seavey."  Doc. 55 at 2.  He asserts that Seavey alone is responsible for the "theft and intentional bad acts," and there is no connection to the Legion.  *Id.* He also asserts that he is a member of the American Legion, and states "[m]y American Legion membership will not tolerate this criminal misuse of our dues to pay Mark Seavey's lawyers for his theft of property. . . ."  *Id.* at 3.

## II. Intervention of Right

Rule 24(a) provides for intervention as a matter of right, in relevant portion, as follows:

> On timely motion, the Court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may

> as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). In the Eleventh Circuit, a party seeking to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2) must satisfy four factors, and if the party is able to do so the Court must allow that party to intervene. *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1512 (11th Cir. 1996); *TIG Specialty Ins. Co. v. Financial Web.com, Inc.*, 208 F.R.D. 336, 337 (M.D. Fla. 2002) (citing *Fed. Savings & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 215 (11th Cir. 1993)). Specifically, a party seeking to intervene must show

> (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit.

Purcell, 85 F.3d at 1512 (citing *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989).

### A. Timeliness of the Motion to Intervene

In determining whether a motion to intervene is timely, courts consider four factors:

> (1) the length of time during which the proposed intervenor knew or reasonably should have known of the interest in the case before moving to intervene; (2) the extent of prejudice to the existing parties as a result of the proposed intervenor's failure to move for intervention as soon as it knew or reasonably should have known of its interest; (3) the extent of prejudice to the proposed intervenor if the motion is denied; and (4) the existence of unusual circumstances militating either for or against a determination that their motion was timely.

*Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1259 (11th Cir. 2002). In this case, the Court finds that the Legion's motion was timely filed. The motion was filed four and one half months after Bernath filed his original compliant (Doc. 1), and three and one half months after Bernath filed his amended complaint (Doc. 20). The motion was filed one month before the Court entered its Case Management and Scheduling Order (Doc. 62) and before the parties engaged in any substantial discovery.[2] The Legion states that when Bernath commenced this action, it and Seavey hoped that Bernath might withdraw his claims or cease to pursue them. Doc. 53 at 9. The Legion also asserts that it intends to follow the same schedule as the current parties in the case. *Id.* Under these circumstances, the Court finds that the motion was timely. *See, e.g., Georgia*, 302 F.3d at 1259 (11th Cir. 2002) (finding a delay of six months in itself does not constitutes untimeliness, especially if the court had yet to take significant action); *Chiles*, 865 F.2d at 1213 (finding that a motion filed seven months after the filing of the original complaint and before discovery had begun was timely and not prejudicial to the parties); *Naples 9, LLC v. EverBank*, No. 2:11-cv-273-FtM-29, 2011 WL 1884628, at *2 (M.D. Fla. May 18, 2011) (finding a motion was timely when it was filed before a trial date was set and finding no prejudice where the proposed intervener intended to follow the same schedule that parties in the case had agreed upon.).

---

[2] Pursuant to M.D. Fla. R. 3.05(c)(2)(B), unless otherwise ordered by the Court, a party may not seek discovery from any source before counsel and any unrepresented parties meet for the purpose of preparing and filing a case management report. In this case, the parties never could arrange such a meeting (Docs. 50, 51). The Court entered a Case Management and Scheduling Order on December 7, 2015, after the instant motion was filed.

*B. Whether the Intervenors have an Interest in the Case*

In determining sufficiency of interest, the Eleventh Circuit has held that "'the intervenor must be at least a real party in interest in the transaction which is the subject of the proceeding. This interest has also been described as a direct, substantial, legally protectable interest in the proceedings.'" *Purcell*, 85 F.3d at 1512 (citing *Worlds v. Department of Health and Rehabilitative Serv.*, 929 F.2d 591, 594 (11th Cir.1991). "A legally protectable interest is something more than an economic interest[;]" rather, the interest must "be one which *substantive* law recognizes as belonging to or being owned by the applicant." *Mt. Hawley Insurance Company v. Sandy Lake Properties*, Inc., 425 F.3d 1308, 1311 (11th Cir.2005) (emphasis in original). The proposed intervenor's interest "need not, however, be of a legal nature identical to that of the claims asserted in the main action." *Chiles,* 865 F.2d at 1214 (internal quotations and citations omitted).

The Court finds that the Legion does have a valid interest in the subject of the action. Upon a review of the pleadings, it is apparent that many of the factual allegations relied upon by Seavey for his claims against Bernath arise out of the same transactions upon which the Legion seeks to rely. *See, e.g.,* Docs. 53-1, 53-2. For instance, numerous statements published by Bernath on his website that Seavey claims are defamatory mention both Seavey and the Legion, refer to Seavey as a Legion employee, or refer to the Legion alone. *See* 53-2. The Legion argues that many of Bernath's statements were published over infringing copies of the Legion's emblem, which belongs exclusively to the Legion. Doc. 53 at 5 (citing 36 U.S.C. §

21705). As such, the Legion argues that the facts and law involved in the claims of Bernath, Seavey, and the Legion are common and overlap, and it has a right to protect its name, reputation, interests, and employees. Doc. 53 at 12. Upon a review of the pleadings in this matter, the Court concludes that the Legion has as a direct, substantial, legally protectable interest in this proceeding.

*C. Whether the Disposition of the Action will Impede or Impair the Intervenors Ability to Protect Their Interest*

In *Chiles*, the Eleventh Circuit stated that "[w]here a party seeking to intervene in an action claims an interest in the very property and very transaction that is the subject of the main action, the potential stare decisis effect may supply the practical disadvantage which warrants intervention as of right." 865 F.2d at 1214. In this case, Bernath has already previously jointly sued Seavey and the Legion for copyright infringement and intentional infliction of emotional distress,[3] and has threatened to sue the Legion again based on the same allegations asserted in his amended complaint.[4] Doc. 53-4 ¶ 11. Thus, because a final ruling in this case may adversely impact the Legion's rights in any future lawsuits with Bernath, the Court finds that its interests could be impaired by the denial of intervention.

---

[3] Bernath twice has sued the Legion and Seavey, among other parties, for defamation, copyright infringement, intentional infliction of emotional distress, racketeering, unfair business practices, breach of contract, and negligent hiring, supervision and training. Doc. 53-4 ¶¶ 7, 9. One lawsuit was dismissed upon motion to dismiss and/or summary judgment, with the Legion and Seavey being awarded prevailing party costs. The other lawsuit was voluntarily dismissed without prejudice by Plaintiff. *Id.* ¶ 10.

[4] On November 3, 2015, Bernath sent an e-mail to counsel for Seavey and the Legion stating that Bernath was suing the Legion "as Mark Seavey says in his answer that he was their agent, or words to that effect." Doc. 60-1 at 1.

*D. Whether the Intervenors' Interest is being Adequately Protected by the Existing Party*

As noted in *Chiles*, the Supreme Court has held that this fourth requirement "is satisfied if the proposed intervenor shows that representation of his interest may be inadequate and that the burden of making that showing should be treated as minimal." *Chiles*, 865 F.2d at 1214 (citing *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10, (1972)). Thus, the Legion "should be allowed to intervene unless it is clear that [Seavey] will provide adequate representation." *Id.* Moreover, "[a]ny doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action." *Fed. Savings,* 983 F.2d at 216. Here, while Seavey and the Legion have similar interests in preserving their reputation and name against the same alleged defamatory statements from Plaintiff, only the Legion can adequately represent its vested interest in the copyright infringement of its emblem and name. As such, its interests are not adequately protected.

### III. Permissive Intervention

Even if the Legion did not meet all of the requirements of Rule 24(a)(2), it still would be allowed to intervene under the permissive intervention standard of Rule 24(b)(1)(b). Rule 24(b) provides for permissive intervention when the proposed intervenor's claims or defenses involve common questions of law or fact and will not prejudice the existing parties or delay resolution of the action. Fed. R. Civ. P. 24(b)(1)(B). Thus, "a party seeking to intervene under Rule 24(b)(2) must show that: (1) his application to intervene is timely; and (2) his claim or defense and the main

action have a question of law or fact in common." *Chiles*, 865 F.2d at 1213. "[I]t is wholly discretionary with the court whether to allow intervention under Rule 24(b) and even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention." *Worlds*, 929 F.2d at 595. Based on the discussion, *supra*, the Legion satisfies both elements of this standard, and under the Court's discretionary authority, it would be granted leave to intervene.

### IV. Conclusion

For the foregoing reasons, the motion is due to be granted.

ACCORDINGLY, it is hereby

**ORDERED:**

1. Motion of the American Legion for Leave to Intervene as Defendant and Counter-Plaintiff Under Rule 24 (Doc. 53) is **GRANTED**.

2. The Answer and Counterclaims of Defendant-Intervenor and Counter-Plaintiff the American Legion (Doc. 53-1) is accepted as filed. The Clerk is directed to file Answer and Counterclaims of Defendant-Intervenor and Counter-Plaintiff the American Legion (Doc. 53-1) under separate docket entry.

3. Plaintiff shall have twenty-one (21) days in which to respond to the American Legion's counterclaims.

4. The American Legion shall serve its Rule 26 disclosures within ten (10) days from the date of this Order.

**DONE** and **ORDERED** in Fort Myers, Florida on this 2nd day of May, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record