UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DANIEL A. BERNATH,

    Plaintiff,

v.                                              Case No: 2:15-cv-358-FtM-38CM

MARK CAMERON SEAVEY,

    Defendant.

## REPORT AND RECOMMENDATION[1]

This matter comes before the Court upon referral from the Honorable Sheri Polster Chappell, United States District Judge, for a report and recommendation on Defendants' Combined Motion to Declare Plaintiff Daniel Bernath a Vexatious Litigant and Incorporated Memorandum of Law (Doc. 109), to which Plaintiff has timely responded (Doc. 111). Defendants, Mark Cameron Seavey ("Seavey") and the American Legion ("the Legion") request the Court to utilize its inherent power under the All Writs Act, 28 U.S.C. § 1651, to impose a pre-filing injunction requiring Plaintiff to obtain leave of court before filing any new actions in this Court or in any court in Florida. Doc. 109 at 2. Although Plaintiff has filed a twenty-page response in opposition, a majority of the response is dedicated to repeated accusations that the

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Legion and Seavey are involved in terrorism, and little information is provided that is pertinent to the instant motion. *See* Doc. 111.

## I. Legal Standard

"Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." *Procup v. Strickland*, 792 F. 2d 1069, 1073 (11th Cir. 1986) (citing *In re Martin-Trigona,* 737 F.2d 1254, 1261-62 (2d Cir. 1984)). The All Writs Act, which codifies this inherent power, provides: "The Supreme Court and all courts established by an act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651; *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (2004) (stating the All Writs Act "is a codification of the federal courts' traditional, inherent power to protect the jurisdiction they already have, derived from some other source") (citing *Procup*, 792 F.2d at 1073). Under the All Writs Act, federal district courts may enjoin vexatious litigants from filing actions in both judicial and non-judicial forums. *See Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1295 n.15, 1298 (11th Cir. 2002); *see also Martin-Trinoga v. Shaw*, 986, F.2d 1384, 1387 (11th Cir. 1993). Indeed, a district court has "considerable discretion" to restrict the filings of a vexatious litigant. *Martin-Trinoga*, 986, F.2d at 1387 (citing *Procup*, 792 F.2d at 1074).

Permissible injunctions upheld by the Eleventh Circuit include pre-filing screening restrictions on litigious plaintiffs. *Copeland v. Green*, 949 F.2d 390, 931

(11th Cir. 1991); *Cofield v. Ala. Pub. Serv. Comm'n,* 936 F.2d 512, 518 (11th Cir. 1991). Courts also have entered orders that (1) enjoin "prisoner litigants from relitigating specific claims or claims arising from the same set of factual circumstances;" (2) require "litigants to accompany all future pleadings with affidavits certifying that the claims being raised are novel, subject to contempt for false swearing;" (3) direct "the litigant to seek leave of court before filing pleadings in any new or pending lawsuit;" and (4) direct the litigant to "attach to future complaints a list of all cases previously filed involving the same, similar, or related cause of action, and to send an extra copy of each pleading filed to the law clerk of the chief judge of the district." *Procup,* 792 F.2d at 1072-1073. Any combination of the foregoing is permissible so long as the injunction does not completely foreclose a litigant from access to the courts. *Martin-Trinoga,* 986 F.2d at 1387 (*citing Procup*, 792 F.2d at 1074).

The traditional standards applicable to issuance of an injunction do not apply to the issuance of an injunction under the All Writs Act.[2] *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100-01 (11th Cir. 2004). Instead, "[a] history of litigation entailing 'vexation, harassment and needless expense to [other parties]' and

---

[2] A moving party seeking a traditional preliminary injunction must show that: (1) it has a substantial likelihood of success on the merits; (2) it will suffer irreparable injury unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Klay*, 376 F.3d at 1097 (citing *Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000). A moving party seeking a traditional permanent injunction must show the aforementioned factors, except that the movant must show actual success on the merits instead of a substantial likelihood of success on the merits. *Id.* (citing *Siegel*, 234 at 1213 (Carnes, J., dissenting)).

'an unnecessary burden on the courts and their supporting personnel' is enough." *Martin-Trigona*, 737 F.2d at 1262 (quoting *Matter of Hartford Textile Corp.*, 681 F.2d 895, 897 (2d Cir.1982)). In determining whether a litigant's conduct is sufficient to justify entry of an injunction against him, the following factors provide guidance:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits, (2) the litigant's motive in pursuing the litigation, e.g. does the litigant have an objective good faith expectation of prevailing, (3) whether the litigant is represented by counsel, (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel, (5) whether other sanctions would be adequate to protect the courts and other parties.

*Ray v. Lowder*, No. 5:02–CV–316–OC–10GRJ, 2003 WL 22384806, at * 2 (M.D. Fla. Aug. 29, 2003) (footnotes omitted). The undersigned recommends that each of these factors compels a conclusion that Bernath is a vexatious litigant whose future filings should be restricted by this Court.

### 1. *Plaintiff's History of Litigation*

Defendants claim that Plaintiff, who was previously licensed to practice law in California, has a "long history of confrontation and disputes based upon perceived grievances he pursues relentlessly using every means at his disposal[,] from litigation and abuse of court process, lies and online defamation, to bar complaints and physical confrontation, all in an attempt to damage those he believes have wronged him." Doc. 109 at 1, 3. A brief review of some of Plaintiff's litigation history shows that this statement is not an exaggeration.

In 1998, Plaintiff was denied admission to practice law in Oregon after the State Board of Bar Examiners and the Oregon Supreme Court determined that he

"failed to prove by clear and convincing evidence that he is a person of good moral character and fit to practice law." *Application of Bernath*, 327 Or. 422, 429 (1998). The court cited a litany of reasons in reaching this conclusion, including but not limited to: Plaintiff's failure to obey a court order to pay child support; several lies, omissions, and misrepresentations by Plaintiff to the Board of Bar Examiners; a judgment against him for malicious prosecution; and Plaintiff's signing a release on behalf of a client, endorsing a settlement check on behalf of the same client, and retaining all of the same settlement proceeds without that client's knowledge or consent. *Id.* at 425-26.

After being denied membership to the Oregon State Bar, Plaintiff registered a domain name, ‹oregonstatebar.tv›, substantially similar to that used by the Oergon State Bar[3] and used it to advertise legal services while displaying the Bar's logo. *Oregon State Bar v. A Special Day, Inc.*, 2001 WL 34013740, at *2 (UDRP-ARB Dec. 4, 2001). Plaintiff offered to sell the domain name to the Bar for $10,000. *Id.* A National Arbitration Forum Panel found that Plaintiff acted in bad faith in registering and using the domain name at issue and ordered that Plaintiff transfer the domain name to the Bar. *Id.* at * 3.

Fast forwarding to 2010, Plaintiff got into a physical altercation in an elevator with an Administrative Law Judge ("ALJ"), Dan R. Hyatt, of the Social Security Administration ("SSA"). *Bernath v. Hyatt*, Civil No. 3:11–CV–00599–KI, 2012 WL

---

[3] The Oregon State Bar's domain name was ‹oregonstatebar.net›. *Oregon State Bar*, 2001 WL 34013740, at *2.

1605582, at * 1 (D. Or. May 8, 2012). Although Plaintiff was arrested, charged and convicted of disorderly conduct as a result of the altercation, he sued ALJ Hyatt, six unidentified federal agents, an unidentified police force hired by the United States, John Does 1 through 10, the United States, the SSA, and Roes 1 through 10 for violation of his civil rights and for negligence. *Id.* at * 1, 3. Plaintiff's claims were dismissed for failure to state a claim. *Id.* at *6.

Apparently, in response, ALJ Hyatt sued Plaintiff for libel *per se*, slander *per se*, and abuse of process in the Circuit Court of the Fourth Judicial District in and for Multnomah County, Oregon. Doc. 109 at 5. Plaintiff countersued ALJ Hyatt and also filed a cross-complaint against Seavey and The Legion and some other forty individuals, claiming a conspiracy among those individuals against Plaintiff. *Id.* The presiding Circuit Court Judge, Jerry B. Hodson, dismissed the cross-claims against the Legion and Seavey on September 24, 2014. Doc. 109-2 at 1.

In 2016, Plaintiff was disbarred from the practice of law in California for repeatedly holding himself out as entitled to practice law, and actually practicing law, while not an active member of the Bar—offenses demonstrating moral turpitude. Decision and Order of Involuntary Inactive Enrollment, at 4-5, *In the Matter of Bernath,* Case Nos. 13-O-1486-LMA, 14-O-00699 (14-0-01941) (State Bar Court of Cal. Feb. 25, 2016); Supreme Court Minutes, at 1296, *In the Matter of Bernath,* S234029 (Sup. Ct. of Cal. July 29, 2016).[4] He also was permanently disqualified from practicing before the Social Security Administration and failed to report such

---

[4] *Available at* http://www.courts.ca.gov/documents/minutes/SJUL2916.PDF.

disqualification to the California State Bar. Decision and Order of Involuntary Inactive Enrollment, at 4-5, *In the Matter of Bernath*, Case Nos. 13-O-1486-LMA, 14-O-00699 (14-0-01941).

During his ongoing disciplinary proceedings in the California Bar, Plaintiff filed a complaint in a Florida state circuit court against the California State Bar attorney prosecuting his disciplinary proceedings and the investigator assisting in the prosecution. *Bernath v. Abella et. al*, Case No.: 15-CA-1555 (Fla. Cir. Ct. June 16, 2015). Plaintiff alleged defamation, commercial disparagement, tortious interference, intentional infliction of emotional distress, and negligent infliction of emotional distress and sought, among other things, $1,000,000.00 in general damages. *Id.* Plaintiff's case was dismissed with prejudice.

Although the history discussed so far is unrelated to the instant case, it is illustrative of Plaintiff's litigation tactics. Turning next to the factually similar cases, as of the date of Defendants' filing of the instant motion, Defendants state Plaintiff had filed no less than twenty punitive lawsuits in state and federal courts in California, Oregon, Maryland, Virginia and Florida during the period of 2014 to 2016; and at least twelve of those cases are directly or indirectly related to the case at hand. Doc. 109 at 4 n.5 (listing cases). These lawsuits named one or both of the Defendants or alleged that the same acts, in whole or in part, taken by numerous different people, were also taken by Seavey, the Legion, or both. *See id.*

As noted in the Court's summary judgment Order, this case stems from a dispute between Bernath and Seavey that began when Seavey allegedly publicly

accused Bernath of engaging in Stolen Valor in an online blog (http://thisainthell.us/) maintained by Seavey. *See* Doc. 227 at 2. Angry at the accusation, Plaintiff responded with defamatory statements, online and physically mailed, accusing Seavey of being a child molester, murderer, and rapist, and accusing the Legion of condoning Seavey's criminal behavior. *Id.* at 11. Bernath then engaged in a campaign of threats and litigation against Seavey and the Legion, and instituted a campaign to force the Legion to terminate Seavey's employment. *Id.* at 3.

Bernath filed the instant case on June 16, 2015. Doc. 1. In December, 2015, he filed another action in the Twentieth Judicial Circuit in and for Lee County, Florida naming Seavey, among many others, as a Defendant and claiming intentional infliction of emotional distress, a claim that was largely duplicative as that alleged in this action. *Bernath v. YouTube, LLC*, et al. Case No. 15-CA-003259 (Fla. Cir. Ct. Dec. 28, 2015). The presiding circuit court judge, Elizabeth Krier, dismissed his complaint, noting "a history of filing vexatious, harassing, and duplicative lawsuits against these Defendants and others in Florida and other jurisdictions." Doc. 83-6 at 3. On August 8, 2016, Plaintiff filed yet another lawsuit in this Court against Seavey and the Legion, among others, arising out of some of the same factual allegations. *Bernath v. The American Legion, et. al*, 2:16-cv-596-FtM-99MRM.[5] The Court also dismissed that lawsuit.

---

[5] In the instant suit, Plaintiff also alleged that Seavey has a "terrorist group," is "the leader of a terrorist gang," has an intent "to destroy [P]laintiff," has engaged in a two-year campaign to cause Plaintiff to "self-murder," and so forth. *See, e.g.*, Doc. 20 at 3-4 ¶¶ 14-16. Plaintiff repeated some of these allegations *Bernath v. The American Legion, et. al*, 2:16-cv-596-FtM-99MRM.

Additionally, Plaintiff has a history of vexatious and duplicative litigation within this lawsuit. He has repeatedly and continuously filed baseless and duplicative motions. *See* Doc. 211 at 2 (noting, "[t]his is not Plaintiff's first or last attempt in seeking to strike Defendants' answers and counterclaims") (citing Docs. 23, 24, 25, 35, 38, 48, 116, 142, 159, 184, 186); *see also* Doc. 242 at 3 (considering yet another motion to strike filed by Plaintiff and holding, "[b]ecause the Court has repeatedly considered and denied similar requests by Plaintiff in the past, and because the Court already has granted summary judgment in favor of Defendants, this motion is due to be denied.") (citations omitted). Moreover, Plaintiff has a history of repeated disregard of the Court's Orders, the Middle District of Florida Local Rules, and the Federal Rules of Civil Procedure. His pattern of non-compliance has led the Court to strike many of his motions, responses, or exhibits as a result. *See e.g.*, Docs. 19 at 2, 30 at 1, 40 at 2, 58 at 3 n.3, 102 at 2. Accordingly, there can be no question that Plaintiff's history of litigation, which entails meritless, harassing, and duplicative filings and lawsuits, is a factor that weighs heavily in favor of deeming him a vexatious litigant and restricting future filings.

### 2. *Plaintiff's Motive in Pursuing Litigation*

In reviewing this factor, Plaintiff's actions in this case are most telling. During the two-year litigation history, Plaintiff failed to conduct any discovery or even properly respond to Defendants' discovery requests, even after a Court Order to do so. *See* Doc. 218. After the expiration of the discovery deadline and after motions for summary judgment had been fully briefed, Plaintiff moved to reopen

discovery because he claimed he retained an attorney, although no notice of appearance had been filed. Doc. 202 at 2. When that tactic did not prevail, Plaintiff moved to voluntarily dismiss his case without prejudice. Doc. 226. Judge Chappell entered summary judgment against Plaintiff notwithstanding his antecedent voluntary dismissal. Doc. 227.

Plaintiff's improper motives in filing his lawsuits has been noted by other courts. For example, in her order dismissing Plaintiff's Complaint in *Bernath v. YouTube, LLC, et al.,* Case No. 15-CA-003259, Judge Krier noted that a "review of the record in general and the Plaintiff's filings in particular shows that the Plaintiff lacks an objective good faith expectation of prevailing. . . . Furthermore, as the Plaintiff is appearing PRO SE he is apparently not constrained by the most basic requirements of a party appearing before this Court by using the law's procedures only for legitimate purposes and not to harass or intimidate others." Doc. 83-6, at 3. Additionally, Plaintiff has hinted at his own motives behind his lawsuits. For example, in an email Bernath sent to Seavey with "American Legion threats of murder" in the subject line, he stated "It is not about winning motions . . . It is about stopping you. . . What's our scorecard? . . the courts are just another tool. Free for us. Expensive for you . . ." Doc. 109-4 at 4-5.

Accordingly, the Court cannot recommend that Plaintiff had an objective good faith expectation of prevailing in this lawsuit. This factor weighs in favor of deeming Plaintiff a vexatious litigant and restricting future filings.

### *3. Whether Plaintiff is represented by counsel*

Plaintiff has appeared *pro se* throughout the entirety of this litigation. The Court has repeatedly warned Plaintiff that his *pro se* status does not insulate him from complying with the Court's orders, the Middle District of Florida Local Rules, and the Federal Rules of Civil Procedure, and that failure to comply will result in the imposition of sanctions, including dismissal. *See* Docs. 19 at 2, 30 at 1, 40 at 2, 58 at 3 n.3, 84 at 2, 101 at 11, 102 at 2, 142 at 8. Despite these warnings, Plaintiff repeatedly has shown a pattern of non-compliance. The Court has been unusually lenient with Plaintiff, and his pro se status does not weigh against finding that he is vexatious.

### *4. Whether Plaintiff Has Needlessly Burdened Other Parties and Unnecessarily Burdened the Court*

This factor is one of the most important that the Court must consider. *Ray*, 2003 WL 22384806, at *3. Indeed, this factor weighs heavily in favor of deeming Plaintiff to be a vexatious litigant and restricting his future filings. In its recent summary judgment Order, the Court noted:

> As an initial matter, during the course of litigation, Bernath has continuously violated the Local Rules, the Federal Rules of Civil Procedure, and Court Orders. As the Court has previously noted, "[t]his case has been pending nearly twenty months, and Bernath's repeated failure to comply with the rules has thwarted the just, speedy, and inexpensive determination of this case." The Court has expended its scant judicial resources above and beyond what is required of it to interpret Plaintiff's *pro se* pleadings and sort through the myriad of improper filings in this case.

Doc. 227 at 5 (internal citations and footnote omitted).

As previously mentioned, although this case had been pending for nearly two years and motions for summary judgment already were briefed, Plaintiff attempted to halt the proceedings by claiming he retained counsel. On March 13, 2017, Plaintiff filed a motion indicating he retained Eric Leckie, an attorney from Virginia, and that his attorney would file an appearance within that week. Docs. 183, 187. Thereafter, in the span of just one week, Plaintiff filed numerous *pro se* motions that sought leave to file replies, sanctions against Defendants and their counsel, postponement of the case deadlines and reopening of discovery, relief from discovery sanctions, and an enlargement of time to respond to Defendants' dispositive motions—all largely premised on Plaintiff's retention of attorney Leckie and attorney Leckie's imminent appearance in the case. Docs. 183-187, 189, 192, 193, 194.

Approximately one month after he indicated he retained counsel, Plaintiff filed a "Notice of Motion and Motion to Appear Pro Hac Vice and Request Waiver of Local Counsel." Doc. 205. Because the motion appeared oddly similar to all of Plaintiff's previous filings, it caused Defendants' counsel and this Court to question its authenticity. Doc. 225 at 2. Accordingly, the Court ordered both Mr. Leckie and Bernath to file affidavits with the Court concerning the motion. Doc. 209. In an affidavit filed with the Court, attorney Leckie denied drafting, reviewing, signing, filing, or authorizing anyone to sign the motion on his behalf. Doc. 217 at 1. Plaintiff, on the other hand, admitted that he drafted and filed the motion, but denied that he signed the motion where the motion indicated that attorney Leckie purportedly signed it. Doc. 214. Meanwhile, during that time period, both the

Court and Defendants were forced to expend considerable time and resources in addressing the numerous frivolous *pro se* filings by Plaintiff. *See e.g.*, Docs. 183, 184, 185, 186, 187, 189, 190, 192, 193, 194, 211.

In sum, this Court had directly witnessed some of the same actions by Plaintiff that the Oregon State Bar relied upon in denying him admission to the Bar. Application of Bernath, 327 Or. at 425-26. This Court is not the only one to have been burdened by Plaintiff's litigation conduct. For example, Judge Hodson noted that "[b]ecause of Mr. Bernath's scattergun approach to pleading and his unwillingness or inability to follow the rules, I had to spend an inordinate amount of time reading through mind-numbing pages of pleadings and other filings that are not contemplated or allowed by the rules in an effort to make sure that due process was served." *Id.* at 3. The judge admonished that if Plaintiff's trend continued, he would impose a requirement that Plaintiff obtain the judge's approval for any future filings. *Id.* Judge Krier's has similarly found that Plaintiff "has caused needless expense to other parties and has posed an unnecessary burden on the Court and its personnel." Doc. 109-5 at 3.

### 5. *Adequacy of Other Sanctions*

Defendants correctly note that history shows us that other measures, including sanctions, have failed to curb Bernath's vexatious *pro se* litigation. Plaintiff has demonstrated a pattern of retaliation against those he deems have wronged him, their counsel, and even the judges presiding over his cases. The most recent example is Plaintiff's filing of an additional lawsuit, after the Court granted summary

judgment in favor of Defendants in this case, on June 26 in the Circuit Court for the Twentieth Judicial Circuit in Lee County, Florida. Complaint, *Bernath v. Mason, et al.* Case No. 17-CA-002I2 (Fla. Cir. Ct. June 26, 2017). In that lawsuit, Plaintiff names as defendants (1) Seavey and the Legion; (2) Attorneys that defended Seavey and the Legion in this lawsuit, and their law firms; (3) Philip B, Onderdonk, the Legion's chief legal officer, and (4) various other individuals he has previously sued. Doc. 246-1. The complaint, which repeats allegations from this suit, seeks $109 million in damages. *Id.* at 14. Additionally, Plaintiff appears to call into question the integrity of the instant proceedings and impartiality of the Court by alleging a vast conspiracy to deprive him of counsel. *Id.* at 7. For example, Plaintiff alleges:

> Plaintiff, because of his mental deficiencies produced complaints and motions which jurists stated were not adequate. Judge Krier of the 20*" Judicial District stated that Plaintiff must hire an attorney to proceed and Judge Chappell of the US District Court also commented on Plaintiffs filings and urged him to hire an attorney to represent him and jurist Chappell acted in a fashion which a reasonable person would view as being biased against a pro se plaintiff and in favor of defendants with legal representation.

*Id.* This is unsurprising considering Plaintiff's history of the abuse of judicial process. *See, e.g.*, Doc. 109-5. "Frivolous and vexatious law suits threaten the availability of a well-functioning judiciary to all litigants." *Miller v. Donald*, 541 F.3d 1091, 1096 (11th Cir. 2008). This factor, in no doubt weighs in favor of declaring Plaintiff a vexatious litigant.

Defendants also jointly request monetary sanctions and attorneys' fees and costs against Plaintiff pursuant to 28 U.S.C. § 1927. Doc. 109 at 21. When a party makes a claim for fees, however, it is the party's burden to establish entitlement and

- 14 -

document the appropriate hours and hourly rate. *Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (citing *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). Here, Seavey and the Legion have not provided such documentation; however, they have pending memoranda on damages, attorney's fees, and costs (Docs. 232, 233), which the Court will address in a separate report and recommendation. Accordingly, as to this motion, the Court recommends denying without prejudice Defendants' request for monetary sanctions and attorneys' fees and costs.

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1. The Court grant in part and deny without prejudice in part Defendants' Combined Motion to Declare Plaintiff Daniel Bernath a Vexatious Litigant and Incorporated Memorandum of Law (Doc. 109).

2. The Court enter an Order declaring Plaintiff a vexatious litigant.

3. The Court impose a pre-filing injunction requiring Plaintiff to obtain leave of court before filing any new actions in this Court or any court in Florida and require Plaintiff to attach to future complaints a list of all cases previously filed involving the same, similar, or related cause of action

**DONE** and **ENTERED** in Fort Myers, Florida on this 18th day of August, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies: Counsel of record